UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DANIEL HORACEK,

No. 07-11885

Plaintiff,

District Judge Arthur J. Tarnow

v.

Magistrate Judge R. Steven Whalen

DAVID J. BURNETT,

Defendant.

_____ /

**REPORT AND RECOMMENDATION**

On December 7, 2007, Plaintiff Daniel Horacek, at the time a prison inmate in the custody of the Michigan Department of Corrections (MDOC),[1] filed a *pro se* civil rights complaint pursuant to 42 U.S.C. § 1983[2] and the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc, *et.seq*. His complaint also includes a state law claim of intentional infliction of emotional distress. He names Defendant David J. Burnett in both his individual and official capacities. Before the Court is Defendant Burnett's Motion for Summary Judgment [Docket #20], which has been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons discussed below,

_____

[1] Plaintiff has since been released on parole.

[2] Plaintiff's § 1983 claims include alleged violation of the First Amendment free exercise clause, right of access to courts, retaliation, equal protection, "religious discrimination," and "racial/ethnic discrimination."

-1-

I recommend that the Defendant's motion be GRANTED IN PART AND DENIED IN PART. Specifically, I recommend that Plaintiff's § 1983 claims against Burnett in his official capacity be dismissed based on the basis of Eleventh Amendment immunity, but that summary judgment be denied as to his § 1983 claims against Burnett in his individual capacity and his RLUIPA claim against Burnett in both his official and individual capacity.

## I.    FACTS

Defendant Burnett is the Special Activities Coordinator with the MDOC in Lansing, Michigan. Part of his duties include "review[ing] information on prisoners' requests for religious services and religious items and approve or deny the requests as set forth in MDOC policy directive 05.03.150, 'Religious Beliefs and Practices of Prisoners.'" *Affidavit of David J. Burnett*, Exhibit A to Motion for Summary Judgment. This case arises out of Defendant Burnett's October 3, 2006 denial of Plaintiff Horacek's request to be placed in MDOC's Kosher Meal Program. The Complaint names Burnett in both his official and individual capacities.[3]

The Plaintiff states in his Complaint that he is a Jewish prisoner who, while at the Macomb Correctional Facility, was the Jewish prisoner representative, and worked with the prison chaplain and the deputy warden "to establish Jewish Service and study callouts, as

---

[3]In his Complaint, the Plaintiff seeks declaratory and monetary relief in the form of "nominal, compensatory, and punitive damages." He does not ask for injunctive relief in the Complaint; however his motion for preliminary injunction [Docket #6] was denied on the basis of mootness, since he was placed back in the Kosher Meal Program. His recent parole would of course moot any claim for injunctive relief as well.

well as assisting the Chaplain and Deputy Warden with community contacts to further the Jewish faith at the Macomb Correctional Facility." *Complaint*, ¶ 12. He states that in 1999, after he was returned to the MDOC as a parole violator, Defendant Burnett approved him for the Kosher Meal Program. *Id.*, ¶¶ 1,2. In August of 2003, he filed a § 1983 suit against a number of MDOC employees, including Burnett. *Id.* ¶ 4. He was again paroled in November of 2004.[4]

In July of 2006, the Plaintiff again violated parole, and was returned to MDOC custody. He states that upon his arrival at the Reception and Guidance Center, he requested placement in the Kosher Meal Program, but was told to wait until he was transferred out of quarantine and into a permanent facility to make his request. *Id.* ¶ 9. Plaintiff was ultimately placed in the Macomb Correctional Facility. He apparently had difficulty obtaining a meeting with the prison chaplain, Chaplain Archer, but eventually did meet with her, and was given a "Kosher Meal Program participation test." *Id.* ¶¶ 8-10; Exhibit A. On September 27, 2006, Chaplain Archer recommended the Plaintiff for the Kosher Meal Program, stating:

> "Prisoner Horacek is Jewish. He is extremely knowledgeable regarding the tenants (sic) of his faith. Therefore because a Kosher Diet is a requirement of his religious belief, I recommend that prisoner 218347 Horacek be transferred to a Level I, Kosher facility." *Complaint*, Exhibit B.

Chaplain Archer's recommendation was forwarded to Defendant Burnett, who had

_____

[4]Defendant Burnett states that Plaintiff was first approved for the Kosher Meal Program on April 15, 2001, and was temporarily removed from the program on July 15, 2003, for "violating the program requirements." (Plaintiff was alleged to have eaten a cheeseburger). The Plaintiff was reinstated in the program on September 16, 2003 until he was paroled on November 18, 2004. *Burnett Affidavit*, ¶ 8.

the final decision-making authority on inmate requests for participation in the Kosher Meal Program. The Plaintiff alleges that on October 21, 2006, Chaplain Archer informed him that Burnett had denied his request for the Kosher Meal Program, and that Burnett told the Chaplain in an email that "as Plaintiff returned to prison as a parole violator and re-offended, Plaintiff is not a 'good Jew' and therefore has lost his constitutional rights to exercise his religious tenets." Chaplain Archer also told the Plaintiff that Burnett's email stated "that since the Plaintiff broke one of the tenets of his religion by committing a crime, he therefore loses his right to observe any other tenets of his chosen religion." *Complaint*, ¶ 13.

Plaintiff alleges that in an attempt to keep kosher to the best of his abilities, he tried to refrain from eating foods served to the general population, except for fresh fruits and vegetables. Otherwise, he "was forced to supplement his diet" through purchasing prison commissary foods, but states that "commissary foods that are kosher certified consist of candy, including candy bars, pies and cakes, potato chips, and corn chips." He couldn't afford the tuna fish. As a result, he states that he gained "an unhealthy amount of weight, putting stress on his existing heart conditions(s)." *Id.* ¶ 15.

Contrary to the Plaintiff's allegations in *¶ 9* of his Complaint, Defendant Burnett alleges that Plaintiff did not request placement in the Kosher Meal Program when he arrived at the Reception and Guidance Center in July of 2006. *Burnett Affidavit*, ¶ 10. However, Burnett concedes that Plaintiff requested the Kosher Meal Program when he was transferred to the Macomb Correctional Facility, and sought an interview with the Chaplain. He further concedes that Chaplain Bernadine Archer recommended granting Plaintiff's request for

kosher meals. *Id.* ¶¶ 12-13. Burnett states as follows as to his reason for denying Plaintiff's request:

> "On 10/3/06, I denied the request. Knowledge about one's faith is not the only indicator of sincerity, nor the determining factor of sincerity. It was my opinion that prisoner Horacek was not sincere about pursuing the practices of his adopted Jewish faith. One reason was the fact that he committed crimes while on parole; his continuing criminal behavior reflected a lack of sincerity about practicing Judaism, which does not advocate crime. When I denied the Kosher Meal Program request, I never said that prisoner Horacek was 'not a good Jew,' but rather that one who is sincere about pursuing the practices of Judaism would not quicky return to criminal behavior, as prisoner Horacek did. In addition, my decision was based on the fact that he was removed from the Kosher Meal Program in 2003 for violating the Program's requirements." *Id.* ¶ 14.

Nevertheless, Plaintiff's request was reconsidered almost a year later, and he was approved for the Kosher Meal Program on September 7, 2007. *Id.* ¶ 18.

In his response to this motion [Docket #41], Plaintiff submitted his own affidavit (Exhibit E), in which he reiterates that he in fact requested participation in the Kosher Meal Program when he arrived at the Reception and Guidance Center in 2005. *Plaintiff's Affidavit*, ¶ 7. He states, at ¶ 8, "A kosher diet is a fundamental tenet of my religious beliefs," and at ¶ 9, "As opposed to defendant's assertion, I did not declare my religion as Judaism 'several years ago.' I have always been Jewish and have declared such." Plaintiff also claims the following physical injuries resulting from the denial of a kosher diet: "excessive weight gain, severely elevated stress levels which aggravated my existing heart problems (arrhythmia, heart valve defect), severely aggravated my colitis, and elevated cholesterol levels which now requires me to take medication to lower." *Id.* ¶ 11. He further states, at ¶

15, that Muslim prisoners are provided with religiously appropriate meals during Ramadan without being subjected to a "sincerity" test or any test, "yet I have been subjected to such tests and was denied equal treatment by defendant Burnett as I was not allowed to receive Kosher for Passover foods during Passover of 2005."

Plaintiff has submitted the handwritten affidavits of Rabbi Chaim Bergstein and Rabbi Harold Finman, describing the Kosher Laws of the Torah. *Response*, Exhibits C and D. He has also submitted affidavits from three Jewish inmates, attesting to Plaintiff's sincere and "deep-seated religious beliefs and observances in the Jewish faith." *Id.*, Exhibits F, G and H. All describe him as a "Shomer Shabbos Jew." *Id.*[5]

## II.   STANDARD OF REVIEW

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). To prevail on a motion for summary judgment, the non-moving party must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First American Bank*, 916 F.2d 337, 341-42 (6th Cir. 1990). Drawing all reasonable inferences in favor of the non-moving party, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby,*

_____

[5]"Shomer Shabbos" refers to one who strictly observes the legal requirements (*mitzvot*) regarding Shabbat, or Sabbath.

*Inc.*, 477 U.S. 242, 251-52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celetox Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact, and summary judgment is appropriate. *Simmons-Harris v. Zelman*, 234 F.3d 945, 951 (6th Cir. 2000).

Once the moving party in a summary judgment motion identifies portions of the record which demonstrate the absence of a genuine dispute over material facts, the opposing party may not then "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact," but must make an affirmative evidentiary showing to defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). The non-moving party must identify specific facts in affidavits, depositions or other factual material showing "evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

### III.   ANALYSIS

### A.   Legal Principles

### 1.   First Amendment/§1983

"To state a claim under 42 U.S.C. § 1983, a plaintiff must set forth facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law." *Sigley*

*v. City of Parma Heights,* 437 F.3d 527, 533 (6th Cir.2006) (citing *West v. Atkins,* 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988)).  In the present case, Plaintiff alleges that Defendant Burnett, an MDOC employee, deprived him of rights secured by the First Amendment.

The First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof...."  The First Amendment is applicable to the States by virtue of its incorporation by the Fourteenth Amendment. *Cantwell v. Connecticut*, 310 U.S. 296, 303, 60 S.Ct. 900, 84 L.Ed. 1213 (1940). Prison inmates are entitled to the protection of the First Amendment, including the free exercise clause.  *O'Lone v. Shabazz,* 482 U.S. 342, 348, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987).

However, an inmate's constitutionally protected rights, including his First Amendment rights, must be balanced against the institution's need to maintain security and order within the prison.  In *Turner v. Safley,* 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987), the Supreme Court held that prison regulations may infringe on a prisoner's constitutional rights as long as they are rationally related to a legitimate penological concern.  *See also Olim v. Wakinekona,* 461 U.S. 238, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983).  "[F]ederal courts must remember that the duty to protect inmates' constitutional rights does not confer the power to manage prisons or the capacity to second-guess prison administrators, for which we are ill-equipped." *Bruce v. Ylst*, 351 F.3d 1283, 1290 (9th Cir.2003).

In the context of the First Amendment free exercise clause,  "[a] prisoner alleging that the actions of prison officials violate his religious beliefs must show that 'the belief or

practice asserted is religious in the person's own scheme of things' and is 'sincerely held.'"

*Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001), quoting *Kent v. Johnson,* 821 F.2d 1220, 1224 (6th Cir.1987). "A religious belief which is not sincerely held or a belief which is purely secular does not require the prison to consider accommodation." *Mosier v. Maynard, D.O.C.*, 937 F.2d 1521, 1526 (10th Cir. 1991), *citing Johnson v. Moore*, 926 F.2d 921, 923 (9th Cir. 1991).

Finally, a § 1983 claim will not lie against a defendant sued in his or her official capacity, on grounds of Eleventh Amendment immunity. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 66, 109 S.Ct. 2304, 105 L.Ed.2d 45(1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994).

## 2. RLUIPA

RLUIPA states in pertinent part:

"No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution ... even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person

(1) is in furtherance of a compelling governmental interest; and

(2) is the least restrictive means of furthering that compelling governmental interest."

42 U.S.C. § 2000cc-1(a).

Thus, a more stringent, less deferential standard is applied to a RLUIPA claim (the least restrictive means of furthering a compelling governmental interest) than to a First Amendment/§1983 claim (reasonably related to legitimate penological interests). *See Cutter*

*v. Wilkinson,* 544 U.S. 709, 125 S.Ct. 2113, 161 L.Ed.2d 1020 (2005). Under RLUIPA, the initial burden of showing a substantial burden on a religious practice lies with the Plaintiff. 42 U.S.C. § 2000cc-2(b). The burden then shifts to the government to demonstrate that the compelling interest test is satisfied. *See id.*

A governmental practice, decision or regulation imposes a "substantial burden" on the exercise of religion "if it truly pressures the adherent to significantly modify his religious behavior and significantly violate his religious beliefs." *Adkins v. Kaspar,* 393 F.3d 559, 569-70 (5th Cir. 2004). Stated differently by the Seventh Circuit, "a substantial burden on religious exercise is one that necessarily bears direct, primary, and fundamental responsibility for rendering religious exercise...effectively impracticable." *Civil Liberties for Urban Believers v. City of Chicago,* 342 F.3d 752, 761 (7th Cir. 2003).

As with a First Amendment claim, the sincerity of the Plaintiff's beliefs forms part of a RLUIPA inquiry. *Cutter,* 544 U.S. at 725 n. 13; *Pugh v. Gord,* __F.Supp.2d__, 2008 WL 2967904, *20 (S.D.N.Y. 2008).

In *Price v. Caruso,* 451 F.Supp.2d 889, 895, 904, fn.6 (E.D. Mich. 2006), the Court adopted a Magistrate Judge's Report and Recommendation finding that a RLUIPA claim would only lie against defendants named in their official capacities, not their individual capacities. However, the Sixth Circuit has at least implicitly acknowledged that a RLUIPA action can be brought against defendants named in their individual capacities. *See Figel v. Overton,* 263 Fed.Appx. 456, 458-459 (6th Cir. 2008), applying a qualified immunity analysis to a RLUIPA claim. Qualified immunity is a defense only available to individual

-10-

defendants, not to a state or municipality, or defendants sued in their official capacities. *Kentucky v. Graham*, 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). *See also Farnsworth v. Baxter*, 2007 WL 2793364, *2 (W.D. Tenn. 2007) (adopting the reasoning of *Daker v. Ferrero*, 2006 WL 346440, *10 (N.D. Ga. 2006) that "this Court reads the RLUIPA to permit suit against state officials in their individual capacities" ). Taking my lead from the Sixth Circuit and the Western District of Tennessee, I find that a RLUIPA claim can be brought against a defendant sued both in his individual and official capacities.[6]

## B. Discussion

### 1. Sincerity of Plaintiff's Religious Beliefs

The MDOC has a Policy Directive that deals specifically with an inmate's eligibility for the Kosher Meal Program. *See* P.D. 05.03.150 (Exhibit A to Motion for Summary Judgment). The Plaintiff makes it clear in his Response to this motion that he is not claiming that this regulation is facially deficient under either the First Amendment or RLUIPA. Rather, he challenges its application to him. Under *Turner*, a constitutional challenge to a prison regulation may be brought facially or as applied. *Flagner v. Wilkinson*, 241 F.3d 475, 484, n. 5 (6th Cir. 2001) ("Under *Turner*, [a] plaintiff[ ] may pursue as-applied challenges to facially valid prison regulations.") (citations omitted); *Figel v. Overton*, 121 Fed.Appx. 642, 646 (6th Cir. 2005). Likewise under RLUIPA, any government action, including one taken

---

[6]The distinction may be academic as a practical matter. As discussed *infra*, monetary damages may be obtained from a RLUIPA defendant sued in either his official or individual capacity. *Price*, *supra*.

pursuant to an otherwise valid regulation, is actionable if it "imposes a substantial burden on the religious exercise of a person residing in or confined to an institution." 42 U.S.C. § 2000cc-1(a).

In his affidavit, Defendant Burnett states that he based his decision to deny Plaintiff's request for the Kosher Meal Program on his finding that Plaintiff's religious beliefs were not sincerely held. *See* Burnett Affidavit, ¶ 14 ("It was my opinion that prisoner Horacek was not sincere about pursuing the practices of his adopted Jewish faith"). Again, the sincerity of a prisoner's religious beliefs is central to both a First Amendment and a RLUIPA claim. "Whether religious beliefs are sincerely held is a question of fact." *Mosier v. Maynard, supra*, 937 F.2d at 1526-27, *citing United States v. Seeger*, 380 U.S. 163, 185, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965). The issue in this summary judgment motion is whether there is a genuine issue of material fact as to the reasonableness of the Defendant's decision, or whether, after drawing all legitimate inferences in favor of the Plaintiff, his lack of sincerity has been established as a matter of law.

In his affidavit, Burnett claims that his decision to deny Plaintiff admission to the Kosher Meal Program, rendered in spite of and contrary to the prison chaplain's recommendation, was based on certain factors that in themselves seem suspect. For example, he notes that Plaintiff's parole was violated based on the commission of additional crimes. "One reason (for denial) was the fact that [Plaintiff] committed crimes while on parole; his continuing criminal behavior reflected a lack of sincerity about practicing Judaism, which does not advocate crime." Burnett Affidavit, ¶ 14.

What religion *does* advocate crime?  And what prison inmate has *not* been convicted of one or several crimes?  The *reductio ad absurdum* of Defendant's reasoning would be the denial of all religious practices to all inmates, or at least to all recidivist inmates.

Defendant Burnett also states at ¶ 14, "In addition, my decision was based on the fact that [Plaintiff] was removed from the Kosher Meal Program in 2003 for violating the Program's requirements."  This is true; the Plaintiff was accused of having been in possession of a cheeseburger.[7]  However, following this alleged incident, the Plaintiff was placed back in the Kosher Meal Program, having been temporarily suspended for only two months.  He remained in the program for the next 14 months, until he was paroled on November 18, 2004.  Thus, notwithstanding a purportedly disqualifying infraction, the MDOC subsequently determined that Plaintiff was sufficiently sincere in his beliefs to be re-admitted to the Kosher Meal Program.  *See Mosier v. Maynard, supra*, 937 F.2d at 1527, where the court found a question of fact sufficient to overcome summary judgment based, in part, on "a prior determination by the corrections department that [the plaintiff's] beliefs were sincere...."

Burnett discounts the chaplain's recommendation, which remarked on the Plaintiff's knowledge about the Jewish faith, stating, "Knowledge about one's faith is not the only indicator of sincerity, nor the determining factor of sincerity." Burnett Affidavit, ¶ 14.

---

[7]A fundamental element of Jewish dietary law, as set forth in the Torah, is the total separation of meat and dairy products. *See, e.g.*,  Exodus 23:19 and 34:26 ("You must not boil a kid in its mother's milk").

However, the MDOC's own regulation regarding the Kosher Meal Program, Operating Procedure 05.03.150-A (III)(L)[8] places great weight on the inmate's knowledge, setting forth a specific knowledge-based test to determine eligibility:

"L.     Upon receipt of such request, the Warden shall verify that the prisoner is eligible to participate in the Kosher Meal Program based on the prisoner's designated religion by requiring the Assistant Deputy Warden for Programs or the chaplain to interview the prisoner and obtain a response to the following questions:

1.     Briefly explain the major teachings of you designated religion.

2.     Why is a kosher diet required by this religion?

3.     What is a kosher diet?  In other words, how does it differ from food otherwise provided by the institution?  What types of food are not allowed?"

Pursuant to this Operating Procedure, the prison chaplain interviewed the Plaintiff, obtained written answers to the questions, *see* Plaintiff's Response, Exhibit K, and recommended that Plaintiff be placed in the Kosher Meal Program.  At a minimum, the undisputed fact that the Plaintiff passed the very eligibility test prescribed by the MDOC Operating Procedure creates a question of disputed fact as to his sincerity that is sufficient to defeat a motion for summary judgment.

In addition, the Plaintiff has submitted affidavits, his own and other Jewish inmates', attesting to the sincerity of his religious beliefs and his active participation in Jewish services, study groups and other religious activities.  *See* Plaintiff's Response, Exhibits E,

---

[8] Attached to Plaintiff's Response as Exhibit A.

F, G and H.  As in *Mosier v. Maynard, supra*, 937 F.2d at 1527, "[t]his is not a case in which the plaintiff merely rested upon an allegation of sincere religious belief."  In combination, the chaplain's recommendation, the Plaintiff's demonstrated knowledge of the Jewish religion, his prior approval for the Kosher Meal Program and the affidavits from other inmates, juxtaposed against the Defendant's questionable reasons for denying the request for kosher meals, create a significant issue of material fact as to the Plaintiff's sincerity.

### 2.    Whether Plaintiff's Beliefs are "Religious" (First Amendment)

In addition to sincerity, a First Amendment claim involves a question of "whether the belief or practice asserted is religious in the person's own scheme of things." *Kent v. Johnson, supra,* 821 F.2d at 1224.  Defendant asserts that to be deserving of constitutional protection, a belief or practice must be a fundamental tenet for each member of the religion,[9] and somewhat tepidly argues that a kosher diet does not qualify as a core tenet of Judaism. Defendant states, at p.11 of his Motion, "It is well known that not all Jewish people follow a kosher diet.  Thus, arguably, following a kosher diet is not a fundamental tenet of Judaism." Assuming that centrality is a requirement in a prisoner's First Amendment free exercise claim,[10] Defendant's argument is ill-supported and illogical.  The fact that some members of

---

[9]On the other hand, as Defendant concedes, RLUIPA explicitly excludes any inquiry into the centrality of a practice to a religion's orthodoxy.  42 U.S.C. § 2000cc-5&7) defines "religious exercise" to "include any exercise of religion, whether or not compelled by, or central to, a system of religious belief."

[10]*See Kent v. Johnson, supra*, asking whether the practice is "religious in the person's own scheme of things," not whether it involves a central tenet or dogma.  As the Third Circuit stated in *Africa v. Commonwealth of Pennsylvania*, 662 F.2d 1025, 1030 (3rd Cir.

a religion might not scrupulously follow a core tenet does not alter the centrality of that tenet. If one were to assume that it is "well known" that not all Catholics regularly attend Mass, does that diminish the centrality of the Eucharist as a sacrament?

More to the point, the Plaintiff has submitted the affidavits of two rabbis, as well as his own (Plaintiff's Exhibits C, D and E), explaining the importance, centrality and obligatory nature of the laws of kashrut, or Jewish dietary laws. *See Ward v. Hatcher*, 172 F.3d 61, *1 (9th Cir. 1999) (Table) ("It is undisputed that...one of the central tenets of Orthodox Judaism is a kosher diet").  Indeed, in recommending that Plaintiff be admitted to the Kosher Meal Program, the prison chaplain wrote that "a Kosher diet is a requirement of [Plaintiff's] religious belief." At a minimum, the Plaintiff has offered evidence that creates a question of material fact as to the centrality of a kosher diet to the Jewish religion that he practices.

### 3.    The Governmental Interest

Because the Plaintiff has established triable questions of material fact as to the sincerity of his belief in and practice of a central requirement of his religion, and as to whether the Defendant, by his decision to deny admission to the Kosher Meal Program, burdened the Plaintiff's exercise of his religion, the next inquiry is twofold: (1) is there also a question of fact, under the First Amendment claim, as to whether the Defendant has shown that his decision was reasonably related to a legitimate penological interest, under *Turner v.*

---

1981), "Judges are not oracles of theological verity, and the Founders did not intend for them to be declarants of religious orthodoxy."

*Safely*, and (2) under a RLUIPA analysis, is there a question of fact as to whether the Defendant's decision was the least restrictive means of furthering a compelling governmental interest?

In addressing these questions in Section III of its brief, pp. 15-18, the Defendant offers several legitimate justifications why, through its Policy Directives and Operating Procedures, the "MDOC limits the Kosher Meal Program to those prisoners who evince a sincerely-held belief in [sic, that] their religion requires a kosher diet and what that entails...." Again, the Plaintiff does not quarrel with the policy on its face; he challenges Defendant Burnett's determination that he was *not* sincere in his beliefs, resulting in an unreasonable misapplication of an otherwise valid policy. A decision to deny the Plaintiff's religious meal request pursuant to established policy must be reasonable. *Ghani v. Caldwell*, 2006 WL 2700749, *2 (E.D. Mich. 2006)(Friedman, J.). In *Ghani*, another case involving the MDOC,[11] the court found that the defendant's conclusion that the prisoner was not sincere in his beliefs, and therefore not entitled to a religious menu, was objectively reasonable because the defendant relied on the recommendation of the prison chaplain. This case represents the corollary—there is at least a factual question as to whether Defendant Burnett's decision was unreasonable because he *disregarded* the chaplain's recommendation.

While the Defendant has set forth adequate penological justifications for the MDOC's policy of denying kosher meals to inmates who are not sincere in their beliefs, he has not

---

[11] The defendant in *Ghani* was David J. Burnett, the Defendant in the present case.

explained what purpose is served by denying kosher meals to inmates who *are* sincere. The point is this: under either a *Turner v. Safely* or RLUIPA analysis, the Defendant's argument for summary judgment essentially stands or falls on the issue of the sincerity of the Plaintiff's religious beliefs. As discussed above, Plaintiff has affirmatively shown a genuine question of material fact on that issue, such that a jury could reasonably find in his favor. Summary judgment is therefore inappropriate. *Anderson v. Liberty Lobby, supra*, 477 U.S. at 252.

### 4.    Qualified Immunity

Defendant Burnett claims qualified immunity, which is an affirmative defense. Under *Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), a state official is protected by qualified immunity unless the Plaintiff shows (1) that the Defendant violated a constitutional right, and (2) the right was clearly established to the extent that a reasonable person in the Defendant's position would know that the conduct complained of was unlawful. Under *Saucier*, the inquiry is sequential, that is, the district court must first consider whether there was a constitutional violation.[12]  *See also Baranski v. Fifteen Unknown Agents of the BATF,* 452 F.3d 433, 438 (6th Cir.2006) (en banc). When "the legal question of immunity is completely dependent upon which view of the facts is accepted by the jury," the "jury becomes the final arbiter of [a] claim of immunity." *Brandenburg v. Cureton,* 882 F.2d 211, 215-16 (6th Cir.1989); *Bouggess v. Mattingly* 482 F.3d 886, 888 (6th Cir. 2007).

Once a defendant has met the burden of affirmatively pleading the defense, the

---

[12]The Supreme Court has granted certiorari in *Pearson v. Callahan*,__S.Ct.__, 2008 WL 754340, directing the parties to brief and argue whether *Saucier* should be overruled.

ultimate burden of proof is on the plaintiff to show that a defendant is not entitled to qualified immunity. *Wegener v. Covington*, 933 F.2d 390, 392 (6th Cir. 1991).

The defense of qualified immunity is available only to state actors sued in their individual capacities; an individual sued in his or her official capacity is not entitled to qualified immunity. *Kentucky v. Graham*, *supra*, 473 U.S. at 166-67; *Alkire v. Irving,* 330 F.3d 802, 810-11 (6th Cir.2003).

As shown above, the Plaintiff has demonstrated a genuine question of material fact regarding the denial of a constitutional right under the First Amendment and a federal statutory right under RLUIPA. On October 21, 2006, when the Defendant denied Plaintiff's request for the Kosher Meal Program, it was clearly established "that prison officials could not substantially burden inmates' rights to religious exercise without some justification." *Figel v. Overton*, *supra*, 263 Fed.Apx. at 459 (citing *Lovelace v. Lee* 472 F.3d 174, 199 (4th Cir. 2006)).[13] In *Lovelace*, a case involving Muslim dietary restrictions during Ramadan, the court stated:

> "Under both the Free Exercise Clause and RLUIPA in its most elemental form, a prisoner has a 'clearly established ... right to a diet consistent with his ... religious scruples,' including proper food during Ramadan. *Ford v. McGinnis,* 352 F.3d 582, 597 (2d Cir.2003); *see also McEachin,* 357 F.3d at 203-04 & n. 7 (collecting cases). A prison official violates this clearly established right if he intentionally and without sufficient justification denies an inmate his religiously mandated diet. *See Meyer v. Teslik,* 411 F.Supp.2d 983, 991 (W.D.Wis.2006). Thus, under both the First Amendment *and* any straightforward interpretation of RLUIPA, the unlawfulness of intentional and unjustified deprivations of Ramadan meals was apparent at the time of the

---

[13] The alleged First Amendment violation in *Figel* occurred in 2003.

incident." 472 F.3d at 198-99.

*See also O'Lone v. Shabazz, supra*, (in which the Supreme Court held in 1987 that prison inmates enjoy the protection of the First Amendment free exercise clause); *Cruz v. Beto,* 405 U.S. 319, 322 n. 2, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972) (concluding that "reasonable opportunities must be afforded to all prisoners to exercise the religious freedom guaranteed by the First and Fourteenth Amendment without fear of penalty").

In 2006, the Plaintiff also had clearly established rights under RLUIPA, a statute that President Clinton signed into law in September of 2000, and which the Supreme Court ruled was constitutional on May 31, 2005. *Cutter v. Wilkinson, supra. See Figel v. Overton, supra*, 263 Fed.Apx. at 458-59.

Therefore, Defendant is not entitled to the defense of qualified immunity.

### 5.  Damages

A Defendant sued in his individual capacity is liable for monetary damages under RLUIPA as well as under § 1983. *See Figel v. Overton, supra; Farnsworth v. Baxter, supra*; *Daker v. Ferrero, supra.* Furthermore, a defendant sued in his official capacity under RLUIPA is liable for monetary damages. Finding that "Congress unambiguously required states to waive their sovereign immunity from suits filed by prisoners to enforce RLUIPA," *Price v. Caruso, supra*, 451 F.Supp.2d at 902, held that "under RLUIPA, Plaintiff may have a claim against Defendant, in her official governmental capacity, for monetary damages." *Id.* at 895. *See also Benning v. Georgia,* 391 F.3d 1299, 1305 (11th Cir.2004); *Hardaway v. Haggerty*, 2007 WL 2868098, \*4 (E.D.Mich. 2007).

The Defendant argues that the Plaintiff's claim for damages for emotional distress is

barred by 42 U.S.C. § 1997e(e), which provides:

> "LIMITATION ON RECOVERY. No federal civil action may be brought by
> a prisoner confined in jail, prison, or other correctional facility, for mental or
> emotional injury suffered while in custody without a prior showing of physical
> injury."

However, in *Siggers-El v. Barlow*, 433 F.Supp.2d 811 (E.D.Mich. 2006), the court

held that § 1997e(e) is not applicable to a First Amendment claim. After reviewing authority

from other districts, *Siggers-El* stated:

> "The Court agrees with the foregoing authorities that § 1997e(e) is
> unconstitutional to the extent that it precludes First Amendment claims such
> as the one presented in this case. The Court holds that the jury was entitled to
> find that Plaintiff suffered mental or emotional damages as a result of
> Defendant's violation of his First Amendment rights. Any other interpretation
> of § 1997e(e) would be inconsistent with the law and also unconstitutional."
> *Id.* at 816.

*Siggers-El* relied in part on Judge Enslen's reasoning in *Percival v. Rowley,* 2005 WL

2572034 (W.D.Mich.2005) (unpublished) (Enslen, J.), stating,

> "In *Percival v. Rowley*... the court held that since First Amendment violations
> rarely, if ever, result in physical injuries, construction of the PLRA against
> recovery of damages would defeat congressional intent and render
> constitutional protections meaningless. If § 1997e(e) is applied to foreclose
> recovery in First Amendment actions, it would place the First Amendment
> itself "on shaky constitutional ground." *Id.* at *2." *Siggers-El*, at 816.

*See also Mason v. Schriro,* 45 F.Supp.2d 709, 718-19 (W.D.Mo.1999). In an unpublished

decision, the Sixth Circuit found that §1997e(e) did not preclude the plaintiff's First

Amendment claim. *Williams v. Ollis,* 2000 WL 1434459, *2 (6th Cir. 2000)(unpublished)

opinion) (citing *Canell v. Lightner*, 143 F.3d 1210, 1213 (9th Cir. 1998)).

Applying the reasoning of *Siggers-El* and *Percival*, I find that Plaintiff's claim for emotional damages under the First Amendment and RLUIPA is not precluded by §1997e(e).[14]

### 6.    Other Claims

In his Complaint, the Plaintiff has also set forth claims alleging retaliation, equal protection (presumably including "racial/ethnic discrimination" and "religious discrimination"), denial of access to the courts, and a state law claim of intentional infliction of emotional distress. However, the Defendant has not challenged those claims in his motion for summary judgment. A court can only decide the issues and facts that are before it, and "should not divine an answer to an important legal question on the basis of utter speculation." *Direct Marketing Ass'n, Inc. v. U.S. Postal Service*, 721 F.2d 55, 59 (2nd Cir. 1983). *See also U.S. v. M/V Santa Clara I*,  859 F.Supp. 980, 986 (D.S.C.,1994) ("A court can only decide issues which are before it"). I will therefore not address these claims at this time.

### IV.    CONCLUSION

For these reasons, I recommend that Defendant's Motion for Summary Judgment [Docket #20] be GRANTED IN PART AND DENIED IN PART, as follows:

I recommend that the Motion be GRANTED to the extent that the § 1983 claims against Defendant Burnett in his official capacity be DISMISSED on the basis of Eleventh

---

[14]Because § 1997e(e) does not require a showing of physical injury in this case, it is not necessary to address the Plaintiff's claim that he in fact suffered weight gain and its attendant physical problems as the result of being denied a healthy kosher diet.

Amendment immunity.

In all other respects, I recommend that the Motion be DENIED.

Any objections to this Report and Recommendation must be filed within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sullivan,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court.

The response shall address specifically, and in the same order raised, each issue contained within the objections.

S/R.  Steven Whalen
R.  STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated:  August 19, 2008

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on August 19, 2008.


S/G. Wilson
Judicial Assistant